IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WILLIAM J. PIERSON, § § Plaintiff, § § v. § § OCWEN LOAN SERVICING, LLC, *et al.*, § § Defendants. § | Civil Action No. 3:15-CV-02314-N |

### ORDER

This Order addresses Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Caliber Home Loans, Inc.'s ("Caliber") motion to dismiss [41]. The Court grants the motion in part and denies in part.

### I. ORIGINS OF THE MOTION

This case arises from Pierson's default on a residential mortgage. Pierson first defaulted on his mortgage payment in 2005. Pl.'s Third Am. Compl. ¶ 6 [40]. GMAC Mortgage LLC, at the time Pierson's loan servicer, accelerated the loan and began foreclosure proceedings. *Id.* ¶ 7. GMAC Mortgage LLC never completed foreclosure proceedings, and in early 2013 Ocwen began servicing Pierson's loan. *Id.* ¶¶ 7–8. In 2014, Pierson applied for a loan modification, and Ocwen offered Pierson a trial modification. *Id.* ¶ 9. Pierson made all payments under the trial payment plan ("TPP"). *Id.* Ocwen then sent Pierson a permanent modification agreement. *Id.* Pierson did not sign the permanent modification agreement. *Id.* ¶¶ 10–14. Pierson maintains he did not sign the agreement because the escrow amount was too low and he contacted Ocwen to fix the escrow amount.

ORDER – PAGE 1

*Id.* After Ocwen informed Pierson he failed to return the agreement in time, and sending him another agreement, Pierson again contacted Ocwen about the escrow amount, at which time Ocwen allegedly informed Pierson there was an outstanding second lien on his property and that it was Pierson's responsibility to resolve the issue. *Id.* ¶ 15. Ocwen then refused Pierson's monthly payment and began foreclosure proceedings. *Id.* ¶¶ 16–18.

While Ocwen was in the process of foreclosing, Pierson submitted another loss mitigation application in May 2015, which Ocwen denied. *Id.* ¶ 20. Pierson submitted another application in November 2015. Shortly thereafter, at the end of 2015, Ocwen transferred the servicing of Pierson's loan to Caliber. *Id.* ¶ 24. Caliber requested additional documentation, which Pierson contends was already part of the complete application package, to complete the loss mitigation application. *Id.* Pierson subsequently amended his complaint to include Caliber as a Defendant. *See* Pl.'s Second Am. Compl. [17].

In his third amended complaint, Pierson brings claims for violations of the Real Estate Settlement Procedures Act ("RESPA") under 12 U.S.C. § 2605(f), (k)(1), 15 U.S.C. § 1638(f) of the Truth in Lending Act ("TILA"), breach of contract, promissory estoppel, violations of the Texas Debt Collection Act ("TDCA"), and declaratory judgment. *See generally* Pl.'s Third Am. Compl. [40].

## II. THE RULE 12(B)(6) STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

ORDER – PAGE 2

(2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the

plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. THE COURT GRANTS THE MOTION IN PART AND DENIES IN PART

#### A. *Pierson's RESPA Claims Against Ocwen and Caliber*

Pierson brings claims under 12 U.S.C. §§ 2605(f), (k)(1) of RESPA. Because Pierson does not state a claim for a RESPA violation to hold Ocwen liable under either section 2605(f) or 2605(k)(1), the Court dismisses the RESPA claims against Ocwen. Because Pierson does state a plausible claim against Caliber for violation of federal regulations, he states a plausible claim for liability under section 2605(f). Thus, the Court denies the motion to dismiss as to the RESPA claim against Caliber.

*1. Pierson Does Not State A Claim Against Ocwen For Failure to Comply with 12 C.F.R. § 1024.41.* – First, Pierson alleges Ocwen did not comply with 12 C.F.R. § 1024.41(f)(2) and 12 C.F.R. § 1024.41(g), federal regulations governing loss mitigation procedures, and thus is liable under 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(f)(2) states:

> If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:
>
> (i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (ii) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (iii) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(f)(2). Section 1024.41(g) prohibits a lender from foreclosing until sending notice of its decision regarding a loss mitigation application to a borrower or until a borrower either rejects or fails to perform a loss mitigation option. 12 C.F.R. § 1024.41(g). It is true that "[c]ourts have recognized a federal cause of action against a servicer for 'dual tracking' under [12 C.F.R. § 1024.41]." *Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 F. App'x 314, 319 n.4 (5th Cir. 2015); *see also Houle v. Green Tree Servicing, LLC*, 2015 WL 1867526, at *3 (E.D. Mich. 2015) ("The rule does not require that the borrower actually received a loan modification; rather, it merely requires that a completed application be properly processed and considered."). Ocwen correctly points out that "[t]he federal restrictions, however, apply only to a borrower's first loss mitigation application." *Id*.; 12 C.F.R. § 1024.41(i) ("A servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan

ORDER – PAGE 5

account."). Here, Pierson alleges that Ocwen did not comply with the federal regulations in connection with his May 2014 application. *See* Pl.'s Resp. to Mot. to Dismiss 2 [49]. Specifically, Pierson claims Ocwen did not comply with the regulations regarding rejecting an application and the appeal process. But Pierson alleges that Ocwen sent Pierson a permanent modification agreement that Pierson did not sign within the required time frame. *See* Pl.'s Third Am. Compl. ¶10–11. And Ocwen sent him notification to that effect in January 2015. *Id.* ¶ 12. By Pierson's own allegations, he rejected the loss mitigation option Ocwen offered in connection with his May 2014 application. Taking Pierson's allegations as true, he does not state a claim against Ocwen for failure to comply with section 1024.41 such that Ocwen could be held liable under section 2605(f).

### 2. Pierson States A Plausible Claim Against Caliber For Failure to Comply with 12 C.F.R. § 1024.41.

– Pierson also claims Caliber failed to comply with the loss mitigation regulations targeted at servicing transfers. The Consumer Financial Protection Bureau's official commentary on section 1024.41(i) states transferee servicers are required to comply with the requirements of section 1024.41, even if a borrower already submitted a complete loss mitigation application. *See* Consumer Financial Protection Bureau's Official Staff Commentary on Regulation X, 2014 WL 2195779, at *8 (June 2016). Moreover, "[d]ocuments and information transferred from a transferor servicer to a transferee servicer *may* constitute a loss mitigation application to the transferee servicer and *may* cause a transferee servicer to be required to comply with the requirements of section 1024.41 with respect to a borrower's mortgage loan account." *Id.* (emphasis added). Caliber claims it was not under a duty to review Pierson's application because it deemed the application

ORDER – PAGE 6

incomplete and requested additional documents, which Pierson did not submit. While the commentary does not state Caliber must evaluate an application the transferor servicer deemed complete, it does state that a previous application may constitute a complete application. And transferee servicers must consider complete applications. *Id.* Here, Pierson alleges he submitted an application to Ocwen in November that Ocwen deemed complete. *See* Pl.'s Third Am. Compl. ¶ 33. When the loan was transferred to Caliber, Caliber requested documents Pierson claims were already in the application he submitted to Ocwen, thus allegedly already in Caliber's possession. *Id.* ¶ 24. Pierson alleges Caliber still has not evaluated his application. *Id.* Based on Pierson's allegations, the Court can infer that Caliber may have had a complete application to review and thus Pierson states a plausible claim for relief against Caliber under RESPA.

### 3. Pierson States A Plausible Claim Against Ocwen Under 12 U.S.C. § 2605(k)(1).

– Finally, Pierson alleges Ocwen violated section 2605(k)(1)(A), section 2605(k)(1)(C), and section 2605(k)(1)(E) of RESPA. Because he alleges factual allegations sufficient to state a plausible claim under section 2605(k)(1)(A) and section 2605(k)(1)(C), the Court denies the motion as to these claims. Because he does not state a plausible claim under section 2605(k)(1)(E), the Court dismisses the claim.

Section 2605(k)(1)(A) of RESPA makes it unlawful for a servicer to "obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance." 12 U.S.C. § 2605(k)(1)(A). Pierson alleges Ocwen violated section 2605(k)(1)(A) by obtaining force-placed hazard insurance without a reasonable basis to do so. *See* Pl.'s Third Am.

Compl. ¶¶ 34–35.  Because Pierson alleges sufficient facts to state a claim under section 2605(k)(1)(A), the Court denies the motion to dismiss as it pertains to this claim.

Pierson also brings a claim under section 2605(k)(1)(C).  Section 2605(k)(1)(C) states a servicer shall not "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."  12 U.S.C. § 2605(k)(1)(C).  Pierson alleges he notified Ocwen regarding the erroneous charges for force-placed hazard insurance and auto insurance.  In support of his claim, Pierson claims "[d]espite unsuccessful attempts to correct this error by Ocwen, Plaintiff has not been able to do so."  *Id.* ¶ 21.  Pierson also claims he notified Ocwen that the second lien was a mistake, in the form of a letter from his lawyer.  Pierson alleges Ocwen did not take timely action to respond to any of his requests to correct the errors.  Based on Pierson's allegations, the Court can infer that Pierson has a plausible claim against Ocwen for failing to respond to his requests in a timely manner.  Accordingly, the Court denies to dismiss his claim under section 2605(k)(1)(C).

Section 2605(k)(1)(E) states a servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."  12 U.S.C. § 2605(k)(1)(E). Because as the Court previously noted, Pierson does not state a claim for failure to comply with any other obligation under RESPA, his claim under 2504(k)(1)(E) is also dismissed.

### *B. Pierson States a Plausible TILA Claim Against Ocwen*

Next Pierson alleges Ocwen violated 15 U.S.C. § 1638(f) of TILA. TILA requires mortgage servicers to send periodic billing statements for each billing cycle. 15 U.S.C. § 1638(f)(1). Pierson alleges he did not receive a monthly statement for at least two periodic billing cycles in 2015. *See* Pl.'s Third Am. Compl. ¶ 42. Ocwen contends that TILA only requires a lender to transmit the monthly statement, it does not require the borrower to receive the statement. *See* Defs.' Br. in Support of Mot. to Dismiss 12 [42]. In support of its argument, Ocwen notes that Texas law only imposes a constructive notice requirement. Because TILA is a federal statute, the cases cited by Ocwen that applied Texas law are not applicable.

At least one case in this District has held that allegations that a plaintiff did not receive a statement can state a plausible claim under section 1638(f). *See* Order 11–12, October 24, 2016 [12], *in Dixon et al. v. Ocwen Loan Servicing LLC et al.*, Civil Action No. 3:16-cv-02094-G (N.D. Tex. removed July 19, 2016) ("Rather, taking the [plaintiffs'] allegations as true, the court can reasonably infer that the defendants failed to transmit the statements."). Ocwen claims that *Dixon* is distinguishable because the plaintiffs in *Dixon* alleged they did not receive statements for two years, thereby stating a plausible claim. But the court in *Dixon* did not base its plausibility decision on the number of months the plaintiffs allegedly did not receive statements. Instead the court noted that the "minor discrepancy" between pleading that they did not receive monthly statements rather than pleading the defendants did not transmit the statements did "not render the [plaintiffs'] claim implausible." *Id.* at 10. Taking Pierson's allegations that he did not receive at least two billing statements as true, the

Court can reasonably infer that Ocwen did not send the statements. Accordingly, Pierson states a plausible claim under section 1638(f).

### C. Pierson Does Not State a Claim Against Ocwen for Breach of Contract

Pierson claims Ocwen breached the trial payment plan ("TPP"). *See* Pl.'s Third Am. Compl. ¶ 56; *see also* Pl.'s Resp. to Mot. to Dismiss 10 n.3 [49]. "The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC,* 490 F.3d 380, 387 (5th Cir. 2007). The Court need not address the deficiencies in Pierson's factual allegations as the breach of contract claim fails as a matter of law because the TPP was not an enforceable contract.

In Texas, "[i]n order for a contract to be valid and enforceable, it must be supported by consideration." *Singh v. JP Morgan Chase Bank*, 2012 WL 3904827, at *4 (E.D. Tex. July 31, 2012). This applies to contractual modifications as well. *Id.* "Under Texas law's 'pre-existing duty rule,' an agreement to do what one is already bound to do generally cannot serve as sufficient consideration to support a contract modification." *Rackley v. JPMorgan Chase Bank, Nat. Ass'n*, 2011 WL 2971357, at *4 (W.D. Tex. 2011). Here, Pierson was already bound to make payments under the Deed of Trust. Because there was no new consideration, the TPP was not an enforceable contract. Accordingly, the Court dismisses Pierson's breach of contract claim against Ocwen.

### D. Pierson Does Not State a Claim for Promissory Estoppel Against Ocwen

Pierson does not adequately plead a claim for promissory estoppel. Promissory estoppel requires "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Martin-Janson v. JP Morgan Chase Bank, N.A.*, 536 F. App'x 394, 398 (5th Cir. 2013) ("Texas courts have contemplated promissory estoppel claims as either independent claims or defenses to a statute of frauds defense."). Ocwen correctly points out that the loan modification is subject to the statute of frauds. *See Martin-Janson*, 536 F. App'x 394, 399. "Where an agreement implicates the statute of frauds, '[t]he promise which is determinative . . . is the promise to sign a written agreement which itself complies with the statute of frauds.'" *Id.* at 398 (alteration in original) (quoting *'"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 940 (Tex. 1973)); *see also Hayes v. Bank of Am., N.A.*, 2014 WL 308129, at *5 (N.D. Tex. 2014) ("To state a claim for promissory estoppel where an oral promise would be barred by the statute of frauds, such as a loan modification or a promise to delay foreclosure, plaintiff must allege that defendant promised to sign a written document in existence at the time."). Thus in order to overcome the statute of frauds, Pierson must allege "there must have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256–57 (5th Cir. 2013).

Here, Pierson's claim fails because his allegations do not overcome the statute of frauds. Pierson alleges that he informed Ocwen that the escrow amount was incorrect and that an Ocwen representative said they would look into it and send him a revised offer. In

ORDER – PAGE 11

a similar case, the Fifth Circuit affirmed the dismissal of a plaintiff's promissory estoppel claim. *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013). In *Miller,* the plaintiffs likewise alleged they made several calls to call center representatives, largely unnamed, and the representatives stated the loan servicer would send a loan modification document. *Id.* The Fifth Circuit noted that the plaintiffs did "not allege that [the loan servicer] promised to sign a prepared document that comports with Texas's statute of frauds, which would have memorialized those promises. This omission is fatal to the [plaintiffs'] promissory estoppel claims." *Id.* Here, Pierson does not allege that Ocwen's representative promised to sign a revised document that was already prepared. Nor does Pierson allege that he and the representative discussed a proper escrow amount, reduced any oral agreement into writing, or agreed to sign an agreement validating any oral agreement made over the phone. Pierson's only factual allegations are that the representative allegedly agreed to look into the matter and send a revised document. Thus, Pierson's allegations do not overcome the statute of frauds and his promissory estoppel claim is dismissed.

### *E. Pierson's TDCA Claims*

Pierson alleges Ocwen violated four sections of the TDCA in the process of collecting his debt. Ocwen moves to dismiss all four claims brought under the TDCA. Because Pierson states a plausible claim for violation of section 392.303(a)(2), the Court grants in part and denies in part.

First, Pierson alleges Ocwen violated section 392.301(a)(8) of the Texas Finance Code. Section 392.301(a)(8) makes it unlawful for a debt collector to threaten to take an action prohibited by law. TEX. FIN. CODE § 392.301(a)(8). Pierson claims that Ocwen

threatened two actions prohibited by law. First, Pierson claims Ocwen sought to sell the Property in violation of federal law. This claim is unsuccessful, as the Court already dismissed Pierson's federal claims against Ocwen for failure to state a claim. Second, Pierson claims Ocwen sought to foreclose after the four year statute of limitations had run, making Ocwen statutorily prohibited from proceeding with foreclosure proceedings. Ocwen contends it is protected under section 392.301(b)(3) which "specifically excludes the exercising of a 'statutory or contractual right of seizure, repossession or sale that does not require court proceedings' from its provisions." *Stallings v. CitiMortgage, Inc.*, 2013 WL 4417424, at *5 (E.D. Tex. 2013) (quoting TEX. FIN. CODE § 392.301(b)(3)). But "a debt collector seeking the affirmative protections of Section 392.301(b)(3) must be within its *contractual* rights." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 477 (5th Cir. 2015) (emphasis in original). Thus if Ocwen was not within its contractual rights because the lien was time barred since 2010 because of GMAC's previous notice of acceleration, it would not be subject to the affirmative protection under section 392.301(b)(3).

Under Texas law, a lender must foreclose on a "real property lien not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.035(a). "If a note contains an optional acceleration clause, defaulting on the note does not automatically begin the statute of limitations . . . . [r]ather, the statute of limitations does not start to run until the holder of the note actually exercises its option to accelerate." *Justice v. Wells Fargo Bank Nat'l Ass'n*, 2016 WL 7240195, at *2 (5th Cir. 2016) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)). But the "holder can abandon acceleration if the holder continues to accept payments without exacting any

ORDER – PAGE 13

remedies available to it upon declared maturity." *Holy Cross*, 44 S.W.3d at 566–67. By his own allegations, Pierson admits he made payments to Ocwen, that Ocwen accepted, in 2014. *See* Pls.' Third Am. Compl. ¶ 9. Moreover Pierson's various loan modification applications, the TPP, and Ocwen's offer of a permanent loan modification further evidence that the parties treated the prior acceleration as abandoned. *See Rivera v. Bank of Am., N.A.*, 607 F. App'x 358, 361 (5th Cir. 2015). Taking Pierson's allegations as true, Ocwen was within its contractual rights and section 392.301(b)(3) applies. Accordingly, the Court dismisses Pierson's TDCA claim under section 392.301(a)(8).

Second, Pierson alleges Ocwen violated section 392.303(a)(2) which prohibits "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2). Pierson claims Ocwen violated this section by attempting to collect his auto insurance funds through the escrow account. Ocwen contends that to state a claim under section 392.303(a)(2), a plaintiff must allege factual allegations of an unfair or unconscionable means of debt collection and actual damages. Ocwen claims that Pierson does not allege actual damages, such as double payment for his auto insurance or increased rates as a result of the alleged conduct. But "[u]nder Texas law, mental anguish is a form of 'actual damages.'" *McCaig*, 788 F.3d at 473. Pierson alleges he suffered from mental anguish as a result of the threat of the loss of his home. *See* Pl.'s Third Am. Compl. ¶ 77. In this case, Pierson alleges that Ocwen was not authorized to advance the payment for Pierson's auto insurance and include it in the escrow account. *See Stallings v. CitiMortgage,*

ORDER – PAGE 14

*Inc.*, 2013 WL 4417424, at *5 (E.D. Tex. 2013) ("Section 392.303(a)(2) of the Texas Finance Code prohibits a debt collector from collecting or attempting to collect interest or charges not authorized by the Note, Deed of Trust or applicable law."). Accordingly, Pierson states a plausible claim for violation of section 392.303(a)(2).

Third, Pierson alleges Ocwen violated section 392.304(a)(8) which prohibits "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8). Pierson claims Ocwen violation this section by including his auto insurance in the escrow account. The Court finds that the allegations that Ocwen included unauthorized charges in the escrow fit more squarely within section 392.303(a)(2). Pierson does not allege that Ocwen misrepresented the character or amount of his consumer debt, but rather included unauthorized charges in his debt, thereby increasing the amount. Because Pierson does not allege that Ocwen ever misrepresented the character, extent, or amount of Pierson's debt, the Court finds Pierson fails to state a claim under section 392.304(a)(8) .

Finally, Pierson alleges Ocwen violated section 392.304(a)(19) which prohibits "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE § 392.304(a)(19). Pierson alleges Ocwen's repeated solicitations of Pierson to submit new loss mitigation applications were merely a pretext to obtain personal financial information. The Fifth Circuit has repeatedly rejected TDCA claims under section 392.304(a)(19) in connection with the renegotiation of a loan. *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015). This is because "[c]ommunications in connection with the renegotiation of a loan do not concern the

ORDER – PAGE 15

collection of a debt but, instead, relate to its *modification* and thus they do not state a claim under Section 392.304(a)(19)." *Id.* (emphasis in original). Pierson likewise relies upon Ocwen's communication with him when soliciting loan modification applications. As a result, he does not state a claim under section 392.304(a)(19).

### F. Pierson's Claims for Declaratory Judgment

Lastly, Pierson's request for a declaratory judgment against the Defendants that the foreclosure was time barred fails because he has not alleged any underlying claim. Removal from state to federal court, in effect, converts a state court declaratory judgment action into one under the federal Declaratory Judgment Act ("DJA"). 28 U.S.C. §§ 2201–2202; *see, e.g.*, *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *5 n.11 (N.D. Tex. 2011); *Morrice Logistics, Ltd. v. Intransit Inc.*, 2011 WL 1327397, at *4 n.1 (W.D. Tex. 2011). The DJA is a procedural mechanism; it creates no substantive rights. *See Lowe v. Ingalls Shipbldg.*, 723 F.2d 1173, 1179 (5th Cir. 1984); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41 (1937). There must first be a justiciable controversy between the parties for the DJA to provide relief. *See Kazmi v. BAC Home Loans Servicing, L.P.*, 2012 WL 629440, at *15 (E.D. Tex. 2012); *see also Turner* 2011 WL 3606688, at *5 (explaining that the DJA is "merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law"). Pierson seeks a declaration that Ocwen and Caliber's foreclosure actions were time-barred under section 16.035(b) of the Texas Civil Practice and Remedies Code. While the Court already noted that based on Pierson's allegations, the statute of limitations had not run prior to 2015, so Pierson did not bring a viable underlying claim that would support declaratory relief. *See Justice v. Wells Fargo*

ORDER – PAGE 16

*Bank, N.A.*, 2015 WL 5916751, at *2 n.24 (S.D. Tex. 2015) (noting that where plaintiff brought underlying claim to quiet title, and that claim is dismissed, a plaintiff's "request for declaratory judgment that limitations ran on Defendants' right to foreclose" has no merit). Accordingly, the Court dismisses Pierson's request for declaratory relief as to the statute of limitations.

Pierson also requests the Court declare that the Defendants violated RESPA by not sending a written denial of loan modification as required by 12 C.F.R. § 1024.41. Because the Pierson does not allege an underlying claim for violation of section 1024.41 under RESPA against Ocwen, his request for a declaratory judgment against Ocwen also fails. Because Pierson states a plausible claim for a RESPA for violation of section 1024.41 against Caliber, the Court denies the motion to dismiss as to the declaratory relief requested under RESPA from Caliber.

## Conclusion

Based on the foregoing reasons, the Court grants the motion in part and denies in part. Accordingly, Pierson's remaining claims against Ocwen are for violation of section 2605(k)(1)(A) and section 2605(k)(1)(C) of RESPA, section 1638(f) of TILA, and section 392.303(a)(2) of the TDCA. Pierson's claim against Caliber for violation of RESPA and his request for declaratory relief also survive dismissal. Because Pierson has amended his complaint twice already, the Court denies leave to amend further.

Signed June 22, 2017.

_____
David C. Godbey
United States District Judge